# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| WSOU INVESTMENTS, LLC d/b/a BRAZOS LICENSING AND DEVELOPMENT, | § § § § | CIVIL ACTION NO. 6:20-cv-487 CIVIL ACTION NO. 6:20-cv-488 CIVIL ACTION NO. 6:20-cv-489 |
| Plaintiff, | § § | CIVIL ACTION NO. 6:20-cv-490 CIVIL ACTION NO. 6:20-cv-491 |
| v. | § § | CIVIL ACTION NO. 6:20-cv-492 CIVIL ACTION NO. 6:20-cv-493 |
| ZTE CORPORATION, ZTE (USA) INC., AND ZTE (TX), INC. | § § § | CIVIL ACTION NO. 6:20-cv-494 CIVIL ACTION NO. 6:20-cv-495 CIVIL ACTION NO. 6:20-cv-496 |
| Defendants. | § § § | CIVIL ACTION NO. 6:20-cv-497  **JURY TRIAL DEMANDED** |

**RESPONSE OPPOSING ZTE (USA) INC.'S MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER VENUE**

ZTE (USA) Inc.'s ("ZTE USA") motion to dismiss or transfer should be denied because: (1) venue is proper in this District and (2) ZTE USA's cursory motion to transfer under § 1404 does not satisfy ZTE USA's heavy burden of proving the NDTX is clearly more convenient than this District. To the extent necessary, WSOU Investments, LLC doing business as Brazos Licensing and Development ("WSOU") requests the opportunity to conduct discovery to test ZTE USA's allegation that it does not maintain a regularly established place of business in this District.

### A. Venue is proper because ZTE USA is deemed to reside in this District.[1]

Venue is proper because ZTE USA is deemed to reside here under the plain terms of 28 U.S.C. §§ 1391(d) and 1400(b). Under § 1400(b) of chapter 28, a civil action for patent infringement "may be brought in the judicial district where the defendant resides." 28 U.S.C. § 1400(b). Section 1400(b) of chapter 28 does not define "reside." Instead, for states with multiple districts, § 1391(d) of chapter 28 defines where a corporation resides "[f]or purposes of venue under this chapter[.]" *See* 28 U.S.C. 1391(d) (emphasis added).

Because "this chapter" refers to chapter 87 of title 28, which includes §1400(b), the definition of "reside" found in § 1391(d) "for purpose of venue under this chapter" must be incorporated in § 1400(b). *See VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1575 (Fed. Cir. 1990), sometimes incorrectly cited as abrogated by *TC Heartland LLC v. Kraft Foods Group Brands LLC*, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017).[2]

Section 1391(d) states that, in states with multiple districts, a corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state." 28 U.S.C. 1391(d). Here, because ZTE

---

[1] WSOU recognizes that an Austin Court refused to apply § 1391(d) to § 1400(b) in *Interactive Toybox*. *See Interactive Toybox, LLC v. Walt Disney Co.*, 1:17-CV-1137-RP, 2018 WL 5284625, at *2 (W.D. Tex. Oct. 24, 2018). There, the Court relied on § 1391(a) and concluded that *Fourco* provides "otherwise" by defining "resides" in Section 1400(b) for purposes of domestic corporations. *Id.* For reasons explained below, WSOU asks this Court to revisit that decision in *Toybox*.

[2] Wright and Miller suggests *VE Holding* was correctly decided. *See* § 3803, Law Applicable, 14D Fed. Prac. & Proc. Juris. § 3803 (4th ed.).

1

USA's contacts with this District would be enough to subject it to personal jurisdiction in this District, it is deemed to reside here.

### a. *Fourco* and *TC Heartland* do not address new § 1391(d) and should not preclude this Court from applying § 1391(d).

The Supreme Court's decisions in *Fourco* and *TC Heartland* does not require a different conclusion. The Supreme Court has never determined whether a general venue statute that governs the "chapter" to which § 1400(b) belongs must be applied to § 1400(b). Instead, each time the Supreme Court has considered the effect of § 1391(c), it has interpreted a version of § 1391(c) that does not include the phrase "under this chapter." *See TC Heartland*, 137 S. Ct. at 1521; *Fourco Glass Co. v. Transmirra Prod. Corp.*, 353 U.S. 222, 222, 77 S. Ct. 787, 788, 1 L. Ed. 2d 786 (1957).

### i. *Fourco* does not address new language of § 1391(d).

In *Fourco*, the Supreme Court held that 28 U.S.C. § 1400(b) was, at that time, the "sole and exclusive provision controlling venue in patent infringement actions, and that it [was] not to be supplemented by the provisions of 28 U.S.C. § 1391(c)." *Fourco*, 353 U.S. 222 (emphasis added). Section 1391(c) was, however, a significantly different statute when *Fourco* was decided in 1957. It stated:

> (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

*See id. Fourco* did not and *could not* consider whether 28 USC § 1400(b) is supplemented by what is *now* 28 USC 1391(d).

In 1988, Congress amended 1391(c) – the venue provision at issue in *Fourco* – to state:

> (c) For purposes of venue **under this chapter**, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. In a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction . . .

28 U.S.C. § 1391 (1988) (emphasis added).

2

Two years later in *VE Holding*, the Federal Circuit considered whether "by [the 1988] amendment to § 1391(c) of chapter 87, Congress meant to apply [the new] definition [of 'reside'] to the term as it is used in § 1400(b)[.]" *VE Holding*, 917 F.2d at 1575. The Federal Circuit recognized:

> Section 1391(c) as it was in *Fourco* is no longer. <u>We now have exact and classic language of incorporation</u>: For purposes of venue <u>under this chapter</u>[.]

*Id.* at 1579 (emphasis added). It concluded that because 28 USC § 1400(b) and 28 USC § 1391(d) belong to the same "chapter" (chapter 28), the definition of "reside" provided in section 1391(c) "for purposes of venue under this chapter" must apply to section 1400(b). *Id.* at 1579 (noting it "would not be sensible to require Congress to say, 'For purposes of this chapter, *and we mean everything in this chapter* . . .,' in order to ensure that it has covered everything in a chapter of the statutes") (emphasis in original).

The Federal Circuit bolstered its decision by noting the following from a December 4, 1986 memorandum to the subcommittee explaining the proposed revision:

> The [new] definition of corporate residence in § 1391(c) now provides a basis for applying the substantial number of venue statutes enacted as part of various substantive federal laws. *As a matter of caution, the proposal limits its definition of residence to the venue provisions gathered in Chapter 87 of the Judicial Code, 28 U.S.C. §§ 1391 through 1412.*

*Id.* at 1582 (emphasis in original).

*VE Holding* refuted the argument that under *Fourco*, the only way for Congress to change venue in a patent infringement action is to change § 1400(b), noting that the Supreme Court had already found § 1400(b) was supplemented by former § 1391(d) in patent suits against foreign defendants:

> It is sometimes said that, since *Fourco*, the only way to change the way that venue in patent infringement actions is determined is to change § 1400(b). This argument fails, however, because the Supreme Court, in *Brunette*, 406 U.S. 706, 92 S.Ct. 1936, refused to impose such a disablement upon the Congress' ability to enact or amend legislation. The issue in *Brunette* was whether § 1400(b) governed venue in a patent suit involving a foreign corporation, or whether the general venue provision applicable to aliens, 28 U.S.C. § 1391(d), governed. <u>The Court held § 1391(d) applied, and that § 1400(b) was supplemented by the provision governing suits against aliens</u>.

3

*Id.* at 1579 (emphasis added).

### ii. 2011 Amendments to § 1391 did not remove "under this chapter" from new § 1391(d).

In 2011, Congress again amended § 1391 by striking subsections (a) through (d) and replacing them with new subsections (a) through (d). As part of the amendment, § 1391(c) (the section at issue in *VE Holding*) was moved to § 1391(d). That section still defines "residency of corporations in states with multiple districts" for "purposes of venue under [chapter 28]." 28 U.S.C. § 1391(d). New § 1391(c) now defines residency for natural persons, "entities with the capacity to sue and be sued" in states that do not have multiple districts, and aliens. It does *not* contain the specific language of incorporation "under this chapter." Instead, it states in relevant part:

> **(c) Residency.**--For all venue purposes--
>
> (1) a natural person . . . ;
>
> (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business; and
>
> (3) a defendant not resident in the United States may be sued. . .

28 U.S.C. § 1391.

### iii. *TC Heartland* does not address new § 1391(d).

In 2017, the Supreme Court held that the definition of "reside" in new § 1391(c)(2) does not apply to § 1400(b). *See TC Heartland*, 137 S. Ct. at 1521. *TC Heartland* rejected the argument that the phrase "[f]or all venue purposes" in new § 1392(c)(2) required applying the section to § 1400(b), pointing out that: (1) the statute at issue in *Fourco* included similar language ("for venue purposes"); and (2) new § 1391(a) contains a "savings clause" stating that § 1391 "shall govern the venue of all civil actions" "[e]xcept as otherwise provided by law." *Id.* at 1516. *TC Heartland* further found that the *absence* of "under this chapter" in new § 1391(c) showed

4

Congress did not intend new § 1391(c) to define "reside" for § 1400(b). *Id.* at 1521 ("Congress deleted 'under this chapter' in 2011 and worded the current version of § 1391(c) almost identically to the original version of the statute.").

The opposite is true for current § 1391(d), which does not use the general language "[f]or all venue purposes" and instead retains the specific, classic language of incorporation considered in *VE Holding*: "[f]or purposes of venue <u>under this chapter</u>[.]" 28 U.S.C. § 1391(d) (emphasis added).[3] The broader phrase "[f]or all venue purposes" evaluated in *TC Heartland* does not have the same impact because it is general language that does not specifically apply to chapter 28.[4] As *Fourco* recognized, "[s]pecific terms prevail over the general in the same or another statute which otherwise might be controlling." *Fourco*, 353 U.S. at 228–29.

Although TC Heartland contains certain broad statements about "§ 1391," the discussion in *TC Heartland* is limited exclusively to the effect of the language in new § 1391(c)(2). Limiting its discussion to the language of § 1391(c)(2) was appropriate because the case on appeal in *TC Heartland* involved a suit brought in Delaware, a state with only one district. Therefore, only the new § 1391(c)(2) was properly at issue. There is no mention of the new §1391(d) in *TC Heartland* and no discussion concerning whether the definition of residence in the new §1391(d) applies to §1400(b).

Any notion that *TC Heartland* must apply to the *whole* of § 1391 is refuted by the Court's refusal to address the new § 1391(c)(3). Just as § 1391(d) was not at issue in *TC Heartland* because the case on appeal was filed in a state with only one district, § 1391(c)(3) was not at issue because

---

[3] The drafters explained that § 1391(d) "is identical to that currently included in the second sentence of § 1391(c), with the addition of the language 'for purposes of venue under this chapter' [retained] from the first sentence of the current subsection." H.R. REP. 112-10, 23, 2011 U.S.C.C.A.N. 576, 580.
[4] Although this creates a separate analysis for venue under § 1391(d) and § 1391(c), courts have long acknowledged the venue analysis under the two different sections is different. *See Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.,* 66 F. Supp. 3d 813, 814 (E.D. Tex. 2014) (acknowledging the different analysis to be applied to the different sections) (cleaned up). Further, Congress knew that by removing the phrase "under this chapter" from § 1391(c) and leaving it in § 1391(d), it was maintaining a separate venue scheme under the two sections.

the defendant was a resident of the United States. The Court refused to address the new § 1391(c)(3) or "express any opinion on this Court's holding in *Brunette*" (which applied old § 1391(d) in patent cases despite § 1400(b)). *See TC Heartland* at 7, n. 2. Any notion that *TC Heartland* applies to the whole of § 1391 is further refuted by *In Re HTC Corp.*, in which the Federal Circuit refused to extend *TC Heartland* to § 1391(c)(3) and instead affirmed *Brunette*. *In re HTC Corp.*, 889 F.3d 1349, 1356 (Fed. Cir. 2018), cert. denied sub nom. *HTC Corp. v. 3G Licensing, S.A.*, 139 S. Ct. 1271, 203 L. Ed. 2d 279 (2019) (cleaned up) (emphasis in original) ("as the Court held in *Brunette*, § 1400(b) itself was not intended to apply to alien defendants").

### iv.  Only *VE Holding* addresses the relevant language at issue.

It is instructive to compare the statutory provisions at issue in *Fourco*, *TC Heartland*, and *VE Holding*. Of the three, only *VE Holding*, where certiorari was denied in 1991,[5] involves the language of incorporation at issue here.

> <u>Statutory language at issue in *Fourco*</u>: (c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.
>
> <u>*Statutory language at issue in VE Holding*</u>: (c) For purposes of venue **under this chapter**, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced . . .
>
> <u>Statutory language at issue in *TC Heartland*</u>: For all venue purposes -- (2) an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction . . .
>
> <u>Language it issue in this case</u>: **(d) Residency of corporations in States with multiple districts.**--For purposes of venue **under this chapter**, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction . . .

WSOU does not challenge the correctness of applying *Fourco* and *TC Heartland* under the facts of those cases. In both cases, the statutory language did *not* include classic language of

---

[5] *Johnson Gas Appliance Co. v. VE Holding Corp.*, 499 U.S. 922, 111 S. Ct. 1315, 113 L. Ed. 2d 248 (1991) (denying certiorari).

6

incorporation "under this chapter." WSOU *does* challenge the correctness of applying *TC Heartland* to hold that new § 1391(d), which expressly defines "reside" for "purposes of venue under [chapter 28]" somehow does not apply to § 1400(b) of chapter 28. *Fourco* and *TC Heartland* simply applied previous versions of the general venue statute and (so long as they are limited to the provisions they addressed) were correctly decided; however, neither case addressed the new statutory language under § 1391(d).

### v. WSOU requests that this Court revisit *Toybox*.

WSOU asks this Court to revisit the Austin court's decision in *Toybox*, where the court relied on § 1391(a) and concluded that *Fourco* conflicts with the current version of § 1391(d) by defining "resides" in § 1400(b) for purposes of domestic corporations. *Id. Fourco* did not address whether new § 1391(d) is consistent with the definition of "resides" for purposes of § 1400(b). The legislative history for the 2011 amendments explains that "[n]ew paragraph 1391(a)(1) would follow current law in providing the general requirements for venue choices, **but would not displace the special venue rules that govern under particular Federal statutes**." *See* H.R. REP. 112-10, 18, 2011 U.S.C.C.A.N. 576, 580 (emphasis added). At the time this amendment was passed, *VE Holding* had been part of the "special venue rules that govern under particular Federal statutes" for over fifty years. Congress knew how §§ 1391 and 1400(b) were applied under *VE Holding* and retained the very language of incorporation *VE Holding* was based on. To conclude that *Fourco* provides a definition of "reside" that conflicts with the "special venue rules that govern under particular Federal statutes," one must first disregard how §§ 1391 and 1400(b) were applied under *VE Holding*. This can be done only by assuming, from the outset, that *TC Heartland* abrogates *VE Holding* as it relates to § 1391(d). As explained above, *TC Heartland* did not address new § 1391(d) because that question was not properly before the Court.

The notion that *Fourco* is the sole and complete source of the definition for "reside" under the current version of § 1391(d) is belied by the Federal Circuit's recent recognition that "*Fourco* . . . **simply did not address the corporate venue at the district level of granularity**." *In re BigCommerce, Inc.,* 890 F.3d 978, 985 (Fed. Cir. 2018) (emphasis added) (considering "Which

7

single judicial district in a multi-district state is the proper judicial district for purposes of venue under § 1400(b) in an infringement suit against a corporate defendant?"). In other words, *Fourco* did not consider the very question Congress answered by passing § 1391(d).

*Fourco* was based on an entirely different version of § 1391 than the current version. The Austin Court's reliance on *Fourco*'s interpretation of old statutory language to interpret *new* statutory language is incorrect.[6]

### vi. ZTE USA has sufficient contact with this District to subject it to personal jurisdiction, and therefore, venue.

ZTE USA's contacts with this District are sufficient to subject ZTE USA to personal jurisdiction (and therefore venue) in this District at least because ZTE USA purposefully places accused products into the stream of commerce in this District. *See* Loveless Decl., Ex. Nos 1-10. A press release by ZTE USA states that ZTE had "invested more than $350 million in U.S. growth" as of 2013 and had partnered with the Houston Rockets to demonstrate its "commitment to building community relations **throughout the state of Texas**." Loveless Decl., Ex. 9 (emphasis added). ZTE USA advertises itself as the "fourth-largest supplier of mobile devices in the U.S. overall." Loveless Decl., Ex. Nos. 1, 3. On October 15, 2019, ZTE Corp. issued a release from Richardson, Texas, announcing that Blade Vantage 2 would be available in "Verizon stores across the U.S." Loveless Decl., Ex. 10. ZTE has previously admitted that ZTE Corp. sells and ships telecommunication equipment to ZTE USA for distribution in the United States. Loveless Decl., Ex. 11 ¶18. In *Slyce*, this Court "applied personal jurisdiction against an out of state defendant that sold its software to a third-party, who then bundled the software into an app and sold it in the United States." *Match Group, LLC v. Bumble Trading Inc.*, W-18-CV-00080-ADA, 2020 WL 1287958, at *4 (W.D. Tex. Mar. 18, 2020) (summarizing *Slyce Acquisition Inc. v. Syte - Visual Conception Ltd.*, No. W-19-CV-00257-ADA, 2019 WL 7598931 (W.D. Tex. Oct. 22, 2019),

---

[6] In contrast, *TC Heartland* relied on *Fourco's* interpretation of the old version of § 1391(c) because the new version of § 1391(c)(2) at issue in *TC Heartland* tracks the relevant language addressed in *Fourco*. That is *not* the case for § 139(d), which retains the very language *TC Heartland* noted is absent from § 1391(c)(2).

reconsideration denied, No. W-19-CV-00257-ADA, 2020 WL 278481 (W.D. Tex. Jan. 10, 2020)).[7] This is precisely how ZTE Corporation and ZTE USA operate. Loveless Decl., Ex. 11 ¶ 18.

### B. The Court should allow venue discovery.

If this Court is not inclined to find that ZTE USA resides in this District under §§ 1391(d) and 1400(b), WSOU requests that it allow discovery on ZTE USA's allegation that it does not have a regularly established place of business in this District. ZTE USA admits it maintained a physical location at River Place Corporate Park, Building I, 6500 River Place Boulevard, Austin, Texas 78730 until July 31, 2015. Mtn., Wood Decl. ¶ 4. Publicly available information still indicates the presence of ZTE USA at the same location. Loveless Decl., Ex. 6. WSOU is entitled to discovery to test ZTE USA's claim that it allegedly discontinued use of its Austin location in July 2015.[8]

Publicly available information also indicates that ZTE TX has paid taxes to Travis County on personal property located at Plaza 7000, 7000 Mopac Expressway, 2nd Floor, Austin, Texas until August 31, 2018 since at least 2015 and continued to do so in 2020. WSOU is entitled to discovery on whether ZTE USA exercised any control over the "Mopac" location such that it is a regularly established place of business of ZTE USA.

Further, ZTE USA's website directs customers to purchase ZTE products from entities that maintain physical locations in this District, including AT&T and Cricket Wireless. WSOU is

---

[7] *See also IDQ Operating, Inc. v. Aerospace Communications Holdings Co., Ltd.*, 6:15-CV-781, 2016 WL 5349488, at *4 (E.D. Tex. June 10, 2016) ("a prima facie showing of purposeful entry into the Texas stream of commerce is established by showing that the defendant's products were sold into a nationwide distribution network and that the products were available in Texas.").

[8] Travis County records do not appear to indicate that ZTE USA paid any personal property taxes associated with its Austin, Texas office during the time period ZTE USA admits it maintained the Austin office. Certainly, these taxes were paid under some name. This raises the question what name ZTE USA paid the taxes under and whether it continues to pay taxes under that name, after it allegedly discontinued use of the Austin, Texas office. Travis County records show that ZTE TX continues to pay taxes associated with its Austin, Texas office after it allegedly discontinued use of that office.

entitled to know whether ZTE USA exercises control over any of these locations. Finally, comparably.com provides information on average "ZTE USA Sales Engineer" salaries in Waco, Texas. Loveless Decl., Ex. 12. WSOU should be allowed discovery on the existence of ZTE USA Sales Engineer positions in Waco, Texas.

Therefore, to the extent this Court does not consider ZTE USA a resident of this District under §§ 1391(d) and 1400(b), WSOU respectfully requests an opportunity to conduct venue discovery.

### C.  ZTE USA's motion to transfer under § 1404(a) should be denied.

ZTE USA's cursory discussion of the convenience factors[9] under § 1404(a) fails to satisfy ZTE USA's heavy burden of proving the NDTX is clearly more convenient than this District. *See* Mtn. at 8.

#### i.  WSOU is firmly rooted in Waco, Texas.

WSOU is a Waco-based company that leverages its proprietary technology and management experience to help inventors and patent owners maximize the full potential of their patents. Hogan Decl. ¶ 1. Not only does WSOU operate out of downtown Waco (WSOU's principal place of business), less than two blocks from the Waco Division Courthouse, WSOU has established deep roots within the Waco community. *Id.* WSOU chose Waco as its headquarters because it was attracted to the burgeoning tech business in Waco, with Baylor acting as the anchor. *Id.* ¶ 3. WSOU's sources of proof are kept in Waco. *Id.* Notably, WSOU has no offices, no documents, nor any employees in Austin. *Id.* WSOU does not have any offices, employees, or documents in the NDTX.

---

[9] *See In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive . . . The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.") (internal citations and quotations omitted).

WSOU's Managing Director of Business Development, Matt Hogan, resides and works in Waco. *Id.* ¶2. Before working with WSOU, Mr. Hogan spent 7 years on Wall Street, and then was the founding CEO of a company that pioneered consumer data control. WSOU considered Mr. Hogan a good fit for its Headquarters in Waco in part because of his close ties to the Waco community, including family members who are Baylor alumni.

WSOU has already engaged in hiring engineering students from Baylor University to support its business, and currently utilizes a local business to maintain its servers. Hogan Decl. ¶¶ 4-5. Before COVID-19 delayed its efforts, WSOU was working to start a local tech meetup in Waco. With Startup Waco[10] recently re-opening on a limited basis, WSOU has already resumed its collaborative efforts in the community. *Id.* WSOU is also working with the Baylor Law IP clinic to offer a quarterly webinar series for Baylor law students. *Id.* WSOU has had ongoing email correspondence with Waco Ventures, a group that manages outside-facing dealings for the Baylor Transfer Technology Office. *Id.* ¶ 6. WSOU has job postings in Waco LPA, Startup Waco, and Waco TXjobs, and is in the search process to hire several Baylor students. *Id.* In establishing its Waco headquarters, WSOU has purchased services from several local Waco companies. *Id.* This includes, for example, an approximately $80,000 renovation project by a local construction company. *Id.* Clearly, WSOU is firmly rooted in Waco.

### ii. ZTE USA fails to show the NDTX is clearly more convenient.

ZTE USA makes little effort to satisfy its burden of proving the NDTX is clearly more convenient than the WDTX. ZTE USA addresses factor 1 (ease of access to sources of proof) by claiming most of its evidence will be located either in its place of business in Richardson, Texas (where it claims its financial and marketing data are stored) or at the Upshaw PLLC law firm (where it claims its technical documents and source code are kept). *See* Mtn., Wood Decl. ¶ 10.

---

[10] Startup Waco is in downtown Waco and is a place for designers, developers, entrepreneurs, and others interested in the Waco startup community to connect. *See* https://members.startupwaco.com/.

WSOU's documents, however, are kept in this District in WSOU's office in Waco. Hogan Decl., ¶7. These cases should not be transferred merely to shift inconveniences.

ZTE USA claims private factors 2 and 3 (compulsory process and witness convenience) favor transfer but points to a declaration that does not identify any witnesses (willing or otherwise) much less disclose their locations. *See* Mtn., Wood Decl. ¶10. In contrast, WSOU has at least one witness, Matt Hogan, who resides and works in Waco. Hogan Decl., ¶ 2. WSOU's specifically identified witness who resides and works in Waco should be given more weight than the speculation that there might be a ZTE witness in the NDTX. Unwilling witnesses in the NDTX, if there are any, are likely to be within the subpoena power of this District. Further, these cases should not be transferred merely to shift inconveniences of witnesses. *X Techs., Inc. v. Marvin Test Sys., Inc.*, CIV.A.SA-10-CV-319-X, 2010 WL 2303371, at *6 (W.D. Tex. June 7, 2010) (the movant must show "transfer would signify more than shifting inconvenience from one party to another").

ZTE USA does not claim any other factors, public or private, favor transfer. Its perfunctory motion to transfer under § 1404 fails to satisfy ZTE USA's burden of proof and should be denied.

## CONCLUSION

For the reasons stated above, ZTE USA's motion to dismiss or transfer should be denied.

Dated: November 6, 2020              Respectfully submitted,

/s/ *Ryan Loveless*
James L. Etheridge
Texas State Bar No. 24059147
Ryan S. Loveless
Texas State Bar No. 24036997
Brett A. Mangrum
Texas State Bar No. 24065671
Travis Lee Richins
Texas State Bar No. 24061296
ETHERIDGE LAW GROUP, PLLC
2600 E. Southlake Blvd., Suite 120 / 324
Southlake, Texas 76092
Telephone: (817) 470-7249
Facsimile: (817) 887-5950
Jim@EtheridgeLaw.com
Ryan@EtheridgeLaw.com
Brett@EtheridgeLaw.com
Travis@EtheridgeLaw.com

Mark D. Siegmund
State Bar No. 24117055
mark@waltfairpllc.com
Law Firm of Walt, Fair PLLC.
1508 North Valley Mills Drive
Waco, Texas 76710
Telephone: (254) 772-6400
Facsimile: (254) 772-6432
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on November 6, 2020, a true and correct copy of the foregoing document was served upon all counsel of record via email under this Court's Local Rules.

/s/ *Travis Richins*
Travis Richins